# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-23127-MOORE/Elfenbein

**SHENZHEN DEJIAYUN NETWORK
TECHNOLOGY CO., LTD.,**

     Plaintiff,

v.

**CHENXI LI d/b/a/ SPRING OCEAN INC.,**

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     **THIS CAUSE** is before the Court on Plaintiff Shenzhen Dejiayun Network Technology

Co., Ltd.'s ("Plaintiff") Motion for Entry of Default Under Fed. R. Civ. P. 55(a) and Entry of Final

Judgment by Default Under Fed. R. Civ. P. 55(b) (the "Motion"), ECF No. [27].  The Honorable

K. Michael Moore referred the Motion to me "for a report and recommendation."  *See* ECF No.

[36].  For the reasons explained below, I recommend that the Motion, **ECF No. [27]**, be

**GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

     This case concerns a federally registered trademark that Plaintiff owns: the word mark

"BAGILAANOE," which is protected under U.S. Trademark Registration No. 5,745,285 for use

with clothing and apparel in Class 25 (the "BAGILAANOE Mark" or the "Mark").[1]  *See* ECF No.

[1] at ¶3; ECF No. [1-1].  Plaintiff first used the BAGILAANOE Mark in commerce on September

---

[1] Because Plaintiff has obtained a clerk's entry of default, *see* ECF No. [35], the Court accepts as true its well-pleaded factual allegations, *see TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1298 (S.D. Fla. 2016), but not its conclusions of law, *see Surtain v. Hamlin Terrace Found*, 789 F.3d 1239, 1245 (11th Cir. 2015).  With that context, the Court lays out the alleged facts without repeating the "Plaintiff alleges" lead-in language.

15, 2018.  *See* ECF No. [1] at ¶9.  Plaintiff registered the BAGILAANOE mark with the United States Patent and Trademark Office on May 7, 2019.  *See* ECF No. [1] at ¶3; ECF No. [1-1].  "The BAGILAANOE Registration remains valid, subsisting, and in full force and effect."  *See* ECF No. [1] at ¶3.

Plaintiff has marketed and sold clothing products under the BAGILAANOE Mark through its internet stores on e-commerce platforms including Amazon.com, Walmart.com, and JD.com.  *See* ECF No. [1] at ¶¶7, 11.  Sales of genuine BAGILAANOE products account for a significant portion of Plaintiff's business and have yielded significant revenue.  *See id*.  Plaintiff has "widely promoted" the BAGILAANOE Mark throughout the United States and internationally and Plaintiff's use of the Mark has extended to both interstate and foreign commerce, including commerce within the Southern District of Florida.  *See* ECF No. [1] at ¶¶9-10.  Plaintiff asserts that the Mark is "a symbol of Plaintiff's quality, reputation and goodwill" and "Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the BAGILAANOE mark."  *See* ECF No. [1] at ¶¶13-14.

Defendant Chenxi Li ("Defendant") is an individual who resides in China but fraudulently used an existing Florida entity, Spring Ocean, Inc. ("Spring Ocean"), to create and maintain its e-commerce store (the "Internet Store").  *See* ECF No. [1] at ¶¶23, 27-32; ECF No. [1-2]; ECF No. [1-3].  Defendant's Internet Store offers for sale, sells, and imports counterfeit and/or infringing BAGILAANOE products.  *See* ECF No. [1] at ¶¶36-38, 40; ECF No. [1-3].  Defendant designed his Internet Store to appear legitimate, using "images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from that of an authorized retailer."  *See* ECF No. [1] at ¶39.  Additionally, Defendant's Internet Store further perpetuates the illusion of legitimacy by accepting payments in U.S. dollars via credit card, PayPal, and Western Union,

offering customer service, and "using indicia of authenticity and security that consumers have come to associate with authorized retailers." *See id*.

Plaintiff alleges that Defendant "has knowingly and willfully used and likely continues to use the BAGILAANOE []mark in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet." *See* ECF No. [1] at ¶36.  Further, "Defendant's unauthorized use of the BAGILAANOE []mark… is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff." *See* ECF No. [1] at ¶¶37, 45.

Plaintiff discovered Defendant's fraudulent use of Spring Ocean's name and information through a prior trademark infringement action Plaintiff brought against Spring Ocean in the Northern District of Illinois.[2]  *See* ECF No. [1] at ¶¶15, 22-32; ECF No. [1-2] at 3-6.  Spring Ocean is a valid and existing entity owned by Xia Jen and Darren P. Tenn Yuk (the "Spring Ocean Owners") with its principal place of business at 13820 S.W. 82nd Ct., Palmetto Bay, Florida.  *See* ECF No. [1] at ¶¶25, 28; ECF No. [1-2] at 13.  Despite Defendant claiming that he is the sole proprietor of Spring Ocean in the Related Action, as further discussed below, the Spring Ocean Owners state otherwise — that they have "no knowledge of the Spring Ocean entity that is defendant to [the Related Action], nor [Defendant] or [Defendant's] attorney." *See* ECF No. [1] at ¶¶22, 25 (citing Resp. to Pl.'s Mot. to Stay Def.'s Mot. and for Leave to Conduct Jurisdictional Disc., at 2, No. 21-6607, ECF No. [124] (N.D. Ill.)); ECF No. [1-2] at 9-10, 40-41.

"Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated." *See* ECF No. [1] at ¶34 (citing

---

[2] *Shenzhen Dejiayun Network Tech. Co., Ltd., v. P'ships and Unincorp. Ass'ns on Schedule "A"* (the "Related Action"), No. 21-6607 (N.D. Ill.).

ECF No. [1-5] at 39.  "Infringers and counterfeiters such as Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts."  *See* ECF No. [1] at ¶35.  "Defendant goes to great lengths to conceal its identity and often uses multiple fictitious names and addresses to register and operate Defendant Internet Stores," and Spring Ocean is just one of those examples.  *See* ECF No. [1] at ¶40.

Defendant is subject to personal jurisdiction in this District because: (1) Defendant falsely held himself out as a Florida-based company by registering the Internet Store under a Florida entity's name, listing Spring Ocean's Florida address, and using a Miami-based telephone number, *see* ECF No. [1] at ¶¶28-30, 40; (2) Defendant's "sales records" support jurisdiction here, *see* ECF No. [1] at ¶21; and (3) Defendant's own "acknowledgment that [he] is subject to personal jurisdiction in Florida," s*ee* ECF No. [1] at ¶¶19, 21.  Indeed, in the Related Action, Defendant signed an affidavit under penalty of perjury, stating that he is "a manager of [Spring Ocean], supervising the operations of the company including its [Internet Store]" and he "ha[s] access to [Spring Ocean] and the [Internet Store's] records."  *See* ECF No. [1-2] at 23.  Defendant attested that "[a]fter diligent search of sale record and to the best of [his] knowledge . . . [t]he [Internet Store] sold 5 items of the accused product," four of which were shipped to Florida.  *See* ECF No. [1-2] at 24, 26.

The Honorable Jeremy C. Daniel, United States District Judge for the Northern District of Illinois, stated that "there is no dispute that Spring Ocean would be subject to personal jurisdiction [in the Southern District of Florida] based on its sales records."  *See* Order at 3, No. 21-6607, ECF No. [152]; ECF No. [1] at ¶¶15–21.  Additionally, Defendant, through his counsel, represented to the court in the Related Action that "Defendant is a sole proprietor [of Spring Ocean].  Defendant

4

uncontrovertibly concedes "Defendant is subject to personal jurisdiction in . . . Florida . . . [and] Defendant has sufficient minimum contacts with . . . Florida . . ." *See id.* at 7.

Accordingly, Plaintiff refiled its claims against Defendant in this District, which include: (1) federal trademark infringement and counterfeiting in violation of Section 32 of the Trademark Act of 1946, 15 U.S.C. § 1114; and (2) federal false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a). *See* ECF No. [1-2] at 10-12. Plaintiff seeks injunctive relief, disgorgement of Defendant's profits realized through his unlawful acts, or alternatively, statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), and Plaintiff's attorney's fees and costs. *See* ECF No. [1] at 12-14.

Plaintiff was compelled to request electronic service under Rule 4(f)(3) due to Defendant's evasion of service. *See* ECF No. [13]. In the Related Action, Plaintiff properly served Defendant, *see* ECF No. [13] at ¶4, and Defendant's counsel appeared and informed Plaintiff's counsel that he would represent Defendant in any new lawsuit and requested notice of any future action filed against Defendant, s*ee* ECF No. [13] at ¶10. Defendant's counsel, however, refused to accept service on Defendant's behalf in the present matter. *See* ECF No. [13] at ¶11. After being notified of this action, Defendant's counsel initially provided a service address in China, only to later replace it with a new address that appears to be false — prompting Plaintiff to seek electronic service under Rule 4(f)(3). *See* ECF No. [13] at ¶¶11-14. The Court granted that motion, *see* ECF No. [17], and Plaintiff served Defendant via e-mail on December 11, 2025, *see* ECF No. [23] at 2. Despite proper service, Defendant failed to respond to the Complaint. Accordingly, Plaintiff filed the Motion seeking entry of default, *see* ECF No. [27], and on February 27, 2025, the Clerk of the Court entered default against Defendant, *see* ECF No. [35].

In addition to entry of default, the Motion seeks "final default judgment and a permanent

injunction against Defendant" pursuant to Federal Rules of Civil Procedure 55 and 58.  *See* ECF No. [27] at 1, 14.  Specifically, Plaintiff asks for two types of relief: (1) a permanent injunction enjoining Defendant from using the BAGILAANOE Mark in connection with the operation of the Subject Domain Name; and (2) an award of statutory damages for willful infringement in the amount of $2,000,00 pursuant to 15 U.S.C. § 1117(c).  *See* ECF No. [27] at 7–13.

## II.   LEGAL STANDARDS

### A.  Default Judgment Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55 (a).  After the clerk enters a default, the Court is authorized to enter a final default judgment if the party seeking it applies for one.  *See* Fed. R. Civ. P. 55 (b)(2); *Surtain v. Hamlin Terrace Found*, 789 F.3d 1239, 1244 (11th Cir. 2015) ("When a defendant has failed to plead or defend, a district court may enter judgment by default.").

"A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact' as set forth in the operative complaint."  *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1298 (S.D. Fla. 2016) (quoting *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).  But the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Surtain*, 789 F.3d at 1245 (quotation marks omitted).  And a defendant's default does not automatically permit the Court to enter a default judgment: "Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered."  *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019); *see also Surtain*, 789 F.3d at 1245 ("Entry of default judgment is only warranted when there

is a sufficient basis in the pleadings for the judgment entered." (quotation marks omitted)).

The Eleventh Circuit has "interpreted the standard" for evaluating whether a sufficient basis for default judgment exists "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Of course, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 678).

## B. Trademark and Unfair Competition Law

### 1. Federal Trademark Infringement (15 U.S.C. § 1114)

"Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc.*, 362 F. Supp. 3d at 1262 (quoting 15 U.S.C. § 1114). "To prevail on a trademark infringement claim under 15 U.S.C. § 1114, the plaintiff must show that it owns a valid trademark, that its mark has priority, that the defendant used such mark in commerce without the plaintiff's consent, and that the defendant's use is likely to cause consumer confusion as to the source, affiliation or sponsorship of its goods or services." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1264–65 (S.D. Fla. 1999); *see also Chanel, Inc.*, 362 F. Supp. 3d at 1262 (consolidating those four elements into two: plaintiff

"had prior rights to the mark at issue" and defendants "adopted a mark or name that was the same, or confusingly similar to" it "such that consumers were likely to confuse the two").

Registration of a mark with the United States Patent and Trademark Office ("USPTO") is "prima facie evidence" of its "validity," "the registrant's ownership of" it, and "the registrant's exclusive right to use" it "in commerce" or "in connection with the goods or services specified in the registration." *See* 15 U.S.C. § 1115(a). A plaintiff's mark has priority if the plaintiff began using the mark before the defendant began using its competing mark. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (noting that plaintiff's mark had priority because it had been selling its products for five years before defendant created the competing domain names). One way a defendant can use a mark in commerce is by "establishing a website on the Internet" that contains the mark. *See id.*

"In determining the likelihood of confusion, the court must analyze the following seven factors: (1) the type of trademark; (2) the similarity of the marks; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets and purchasers; (5) the similarity of the advertising media used; (6) the defendant's intent; and (7) actual confusion." *Carnival Corp.*, 74 F. Supp. 2d at 1265. There are "four categories" of marks: generic; descriptive; suggestive; and "fictitious, arbitrary or fanciful." *See Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1540 (11th Cir. 1985) (citation omitted). The Eleventh Circuit has described the difference between the categories this way:

> The demarcation between each category is more blurred than it is definite. A term which suggests the basic nature of the service is generic. The term Milk Delivery is an example of a generic service mark for a hypothetical milk delivery service. A generic term is typically incapable of achieving service mark protection because it has no distinctiveness. A descriptive term merely identifies a characteristic or quality of a service. An example of a descriptive service mark might be BarnMilk. Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning. The personal name

component of a service mark such as Barney's to denote a milk delivery service is also considered not inherently distinctive and hence merely descriptive. However, if the personal name mark acquires secondary meaning, it is afforded the strength of an inherently distinctive mark. Marks which are descriptive of geographic location of the source of the service are treated in the same manner as personal name marks. A suggestive term suggests the characteristics of the service and requires an effort of the imagination by the consumer in order to be understood as descriptive of the service. Barn–Barn is an example of a suggestive term. Because a suggestive service mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable. An arbitrary or fanciful term bears no relationship to the service. Arbitrary and fanciful terms are also inherently distinctive, so they are protectable without proof of secondary meaning. Barnbarnfish is an example of an arbitrary or fanciful service mark.

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522–23 (11th Cir. 1991) (cleaned up); *see also Laite*, 756 F.2d at 1540 (noting that suggestive marks are "comparatively weak" but "will be protected without proof of secondary meaning" and that fictitious/arbitrary/fanciful marks are "generally inherently distinctive" and therefore "strong" and "afforded the widest ambit of protection").

"Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service." *Investacorp, Inc.*, 931 F.2d at 1525. "Absent consumer survey evidence," "four factors can be considered in determining whether a particular mark has acquired a secondary meaning: (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's service." *Id.* (cleaned up).

Actual confusion is "reported instances of individuals who have actually become confused about the source of the services because of the similarities between the parties' trademarks." *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1360 (S.D. Fla. 1998). Plaintiff can show actual confusion in many ways, including with evidence of "consumer inquiries

regarding possible affiliation between the parties," "attempts to purchase goods or services actually offered by the other party," "misdirected correspondence such as bills or letters," and misdirected phone calls. *See id.* Plaintiffs can also offer "survey evidence" and witness testimony. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 845 (11th Cir. 1983). "The strength of such evidence depends on the number of instances of confusion, the kinds of persons confused and the degree of confusion." *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 137 (11th Cir. 2022) (quotation marks omitted). The most important consideration is the type of person confused: if "consumers of the relevant product or service, especially the mark holder's customers," are confused, courts give that fact "substantial weight." *See id.* (quotation marks omitted).

"The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists. Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision. The appropriate weight to be given to each of these factors varies with the circumstances of the case." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (citations omitted). "Of these factors, the type of mark and the evidence of actual confusion are the most important in this circuit," *Dieter*, 880 F.2d at 326, but actual confusion "is obviously not a prerequisite to a finding of likelihood of confusion, as it is one of seven factors considered in the likelihood-of-confusion determination," *Wreal, LLC*, 38 F.4th at 137. "In reviewing the evidence, there are no set rules as to how much evidence of confusion is needed; rather, a district court must take into consideration the circumstances surrounding each particular case." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997) (quotation marks omitted).

## 2.   Federal Unfair Competition/False Designation of Origin (15 U.S.C. § 1125(a))

"Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition in interstate commerce, and forbids unfair trade practices involving infringement of trademarks, even in the absence of federal trademark registration." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (alteration adopted, quotation marks omitted). "Section 43(a) is remedial in nature and should be interpreted and applied broadly so as to effectuate its remedial purpose." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). "The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source." *Suntree Techs.*, 693 F.3d at 1346 (citation and emphasis omitted). "Common law and statutory trademark infringements are merely specific aspects of unfair competition." *Planetary Motion, Inc.*, 261 F.3d at 1193–94 n.5.

"To state a claim for unfair competition and false designation of origin, a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two," *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1355–56 (S.D. Fla. 2012) (quotation marks omitted), which are the same elements required "to prevail on [a] federal claim of trademark infringement," *Suntree Techs.*, 693 F.3d at 1346. *Cf. Chanel, Inc.*, 362 F. Supp. 3d at 1262 (explaining that the "test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue"). Because the "legal standard for unfair competition under both the Lanham Act and the common law has been held to be essentially the same as the standard for trademark infringement," courts "apply the same seven-

factor 'likelihood of confusion' test to claims brought under 15 U.S.C. § 1125(a) as well as infringement claims." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1284–85 (S.D. Fla. 2015). A false designation of origin claim "proscribes the behavior of passing off or palming off, which occurs when a producer misrepresents his own goods or services as someone else's." *Custom Mfg.*, 508 F.3d at 647 (quotation marks omitted).

## C. Forms of Relief Available in Trademark Cases

### 1. Permanent Injunction Standard

A district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." *See* 15 U.S.C. § 1116(a). Indeed, injunctive relief "is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (quotation marks omitted). In "ordinary trademark infringement actions complete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks — even in cases in which more than one entity has a legal right to use the mark." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (alteration adopted, citation and quotation marks omitted).

"Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public

interest would not be disserved by a permanent injunction." *Id.* at 1208.  In "trademark cases, a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm." *Chanel, Inc.*, 362 F. Supp. 3d at 1263 (alteration adopted, quotation marks omitted).  In this Circuit, courts apply a "presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim" because "infringement by its nature causes irreparable harm." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1287 (S.D. Fla. 2010) (quotation marks omitted).  The same presumption applies when analyzing permanent injunctions, *id.* at 1287 n.4, because the "standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success," *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

"[E]ven in a default judgment setting, injunctive relief is available." *Chanel, Inc.*, 362 F. Supp. 3d at 1263.  In fact, a defendant's "failure to respond or otherwise appear . . . makes it difficult for" a plaintiff "to prevent further infringement absent an injunction." *Id.*  If a court determines that an injunction is warranted, its "broad equity powers allow it to fashion" whatever kind of injunctive relief is "necessary to stop" a defendant's "infringing activities." *Id.* at 1264.

### 2.  Statutory Damages

"In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services."  15 U.S.C. § 1117(c).  Those statutory damages can be "in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just,"

13

or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)–(2).

Courts in this District have "defined willful infringement as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (quotation marks omitted).  In addition, courts "may infer that Defendants willfully infringed Plaintiff['s] copyrights because of Defendants' default." *Arista Recs., Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003).  "An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement." *See besumart.com*, 240 F. Supp. 3d at 1292.  "Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain." *Id.*  Overall, "District courts have wide discretion in awarding statutory damages." *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219.

## III.   DISCUSSION

As noted above, Plaintiff moves for a final default judgment, a permanent injunction, and statutory damages.  *See* ECF No. [27].  Because injunctive relief and statutory damages is warranted only if Defendant has violated one or more of Plaintiff's trademark rights, *see, e.g.*, 15 U.S.C. § 1116(a); 15 U.S.C. § 1117(c); *Agad*, 911 F. Supp. at 1509–10, the Court first assesses whether Plaintiff is due a final default judgment on its infringement and false designation of origin claims before evaluating whether it is entitled to a permanent injunction or statutory damages.

### A.  Final Default Judgment

Plaintiff has already obtained a clerk's default, *see* ECF No. [35], so final default judgment

is appropriate if there is a "sufficient basis" for it in the Complaint, *see Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245.   A sufficient basis for default judgment exists if the Complaint states a claim to relief that is plausible on its face — that is, pleads factual content allowing the Court to draw the reasonable inference that Defendant is liable for trademark infringement or false designation of origin.   *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41.   Of course, for Defendant to be liable for the claims against it, Plaintiff must have pleaded factual content establishing each element of those claims.

### 1.   Federal Trademark Infringement (Count I)

Under § 1114, Plaintiff must show that: (1) it owns a valid trademark; (2) its mark has priority; (3) Defendants used the mark in commerce without its consent; and (4) Defendants' use is likely to cause consumer confusion.   *See Carnival Corp.*, 74 F. Supp. 2d at 1264–65; *Chanel, Inc.*, 362 F. Supp. 3d at 1262.   Plaintiff's well-pleaded factual allegations — which Defendants by their default have admitted are true, *see TracFone*, 196 F. Supp. 3d at 1298 — satisfy this standard.

First, the BAGILAANOE Mark is a valid trademark giving Plaintiff exclusive rights to use the Mark.   *See* ECF No. [1] at ¶¶8, 50; ECF No. [1-1].   Plaintiff has used the Mark in interstate and foreign commerce, including commerce in the State of Florida and the Southern District of Florida since 2018.   *See* ECF No. [1] at ¶9; ECF No. [1-1].   "The BAGILAANOE mark has never been assigned or licensed to Defendant in this matter."   *See* ECF No. [1] at ¶12.   Additionally, the Mark has been registered with the USPTO since 2019, *see* ECF No. [1] at ¶3; ECF No. [1-1], giving Plaintiff statutory trademark rights in the Mark, *see* 15 U.S.C. § 1115(a).

Second, Plaintiff's Mark has priority over the confusingly similar counterfeit marks Defendant has been using.   As noted above, Plaintiff has used the Mark in commerce since September 2018.   *See* ECF No. [1] at ¶9; ECF No. [1-1].   Plaintiff's allegations do not expressly

state, but imply, that Plaintiff has used the Mark before Defendant began the infringing Internet Store. *See generally* ECF No. [1]. The attachments to the Complaint show that Defendant's Internet Store has sold five products beginning in November 2021. *See* ECF No. [1-3] at 26. Taken as true, Plaintiff has been using the Mark before Defendant created that infringing Internet Store. That is all that is required for the BAGILAANOE Mark to have priority. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1218 (noting that a plaintiff's mark had priority because the plaintiff began using the mark before the defendant began using its competing mark).

Third, Defendant has used marks that are confusingly similar counterfeits of the BAGILAANOE Mark in commerce without Plaintiff's consent. Specifically, Defendant established his Internet Store that offers for sale, sells, and imports counterfeit and/or infringing BAGILAANOE products.[3] *See* ECF No. [1] at ¶¶36-38, 40; ECF No. [1-3]. Defendant designed his Internet Store to appear legitimate, using "images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from that of an authorized retailer." *See* ECF No. [1] at ¶39. Additionally, Defendant's Internet Store further perpetuates the illusion of legitimacy by accepting payments in U.S. dollars via credit card, PayPal, and Western Union, offering customer service, and "using indicia of authenticity and security that consumers have come to associate with authorized retailers." *See id.* Plaintiff "has never . . . assigned or licensed [the Mark] to Defendant in this matter," *see* ECF No. [1] at ¶12, but Defendant "has knowingly and willfully used and likely continues to use the BAGILAANOE trademark. . . ," *see* ECF No.

---

[3] The Court notes that Plaintiff's Motion repeatedly refers to an affidavit of Jeng Dialiang. *See generally* ECF No. [27]. That affidavit is not located anywhere in the record. But, even if Plaintiff had attached such an affidavit to the Motion, the Court would not consider such an affidavit in connection with determining whether a default judgment is appropriate as the Court may only consider the well pleaded factual allegations of the Complaint and not other extrinsic evidence.

[1] at ¶36, which "is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff," *see* ECF No. [1] at ¶¶37, 45.

Fourth and finally, Defendant's use of the BAGILAANOE Mark is likely to cause consumer confusion. Looking to the factors that determine likelihood of confusion, *Carnival Corp.*, 74 F. Supp. 2d at 1265, the Court finds that the BAGILAANOE Mark falls into the fictitious/arbitrary/fanciful category, *see Laite*, 756 F.2d at 1540. The word "BAGILAANOE" is a fictious word with no common meaning. Because it has no common meaning, the Court recognizes that the BAGILAANOE Mark is "generally inherently distinctive" and does "not suggest or describe the goods or services offered thereunder." *See Laite*, 756 F.2d at 1540; *see also Frehling Enters., Inc.*, 192 F.3d at 1335. Because the BAGILAANOE Mark is a fictitious mark, it is "inherently distinctive" and therefore "strong" and "afforded the widest ambit of protection." *See Frehling Enters., Inc.*, 192 F.3d at 1335; *Investacorp, Inc.*, 931 F.2d at 1523; *Laite*, 756 F.2d at 1540.

Of the seven factors the Court uses to determine the likelihood of confusion, "the type of mark and the evidence of actual confusion are the most important in this circuit." *Dieter*, 880 F.2d at 326. So the fact that the BAGILAANOE Mark is in the strongest category and afforded the widest ambit of protection weighs heavily in favor of finding likelihood of confusion here. Most of the other factors support that conclusion, including the similarity of the marks, the similarity of the products the marks represent, the similarity of the parties' retail outlets and purchasers, and Defendant's intent. *See Carnival Corp.*, 74 F. Supp. 2d at 1265.

The similarity of the marks is apparent after even a quick comparison, as Defendant's Internet Store is named "BAGILAANOE" to advertise the infringing product. *Compare* ECF No. [1-3], *with* ECF No. [1-1]. The products themselves are of the same type (clothing), the retail

outlets and purchasers are the same (online marketplaces and clothing buyers), and the kind of advertising is the same (online). *See* ECF No. [1] at ¶¶7, 11, 28, 39. And though Defendant has not participated in this lawsuit such that the Court can know his actual intent, Defendant has used verbatim the fictious word "BAGILAANOE" on his Internet Store, indicating Defendant's apparent intent to use the success of Plaintiff's BAGILAANOE brand to sell counterfeit products. *See* ECF No. [1-3].

Although Plaintiff makes the conclusory allegation that actual confusion has already occurred, but otherwise fails to establish actual confusion, the Court can find likelihood of confusion without it. *See Wreal, LLC*, 38 F.4th at 137; *Suntree Techs., Inc.*, 693 F.3d at 1346. On balance, the six factors in Plaintiff's favor outweigh the one factor in Defendant's favor. Under the circumstances of this case, even in the absence of evidence of actual confusion, the Court finds that Defendant's Internet Store is likely to cause consumer confusion with the BAGILAANOE Mark. *See Carnival Corp.*, 74 F. Supp. 2d at 1265; *Suntree Techs., Inc.*, 693 F.3d at 1346; *Longhorn Steaks, Inc.*, 122 F.3d at 138. Having met all four elements of federal trademark infringement under § 1114, Plaintiff has stated a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41. As a result, Plaintiff is entitled to final default judgment on Count I. *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245.

### 2. Federal Unfair Competition and False Designation of Origin (Count II)

Under § 1125(a), Plaintiff must show that: (1) it has enforceable trademark rights in the trademarks, and (2) Defendant made unauthorized use of those marks such that consumers were likely to confuse them with Defendant's imitations. *See Brain Pharma*, 858 F. Supp. 2d at 1355–56. Although described in two elements instead of four, these requirements are the same ones

needed for a plaintiff to prevail on a federal claim of trademark infringement. *See Suntree Techs.*, 693 F.3d at 1346; *Chanel, Inc.*, 362 F. Supp. 3d at 1262; *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1284–85. The only real difference between a claim under § 1114 and a claim under § 1125(a) is that relief is available for unregistered marks under § 1125(a) but not under § 1114. *See Custom Mfg.*, 508 F.3d at 647.

But that difference does not change the likelihood-of-confusion analysis, because the "legal standard for unfair competition" is "essentially the same" as the one for trademark infringement. *See Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1284–85. For that reason, the Court's findings in its analysis of Count I, *see supra* Section III.A.1, apply just as strongly to Count II. Thus, the Court finds that Plaintiff has enforceable trademark rights in the BAGILAANOE Mark, and that Defendant made unauthorized use of the Mark such that consumers were likely to confuse them with Defendant's imitation. *See Brain Pharma*, 858 F. Supp. 2d at 1355–56.

Having met both elements of federal unfair competition and false designation of origin under § 1125(a), Plaintiff has stated a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41. As a result, Plaintiff is entitled to final default judgment on Count II. *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245.

Accordingly, Plaintiff has satisfied the elements and established Defendant's liability for trademark counterfeiting and infringement pursuant to § 1114 (Count I) and false designation of origin pursuant to § 1125(a) (Count II). For that reason, I respectfully **RECOMMEND** that final default judgment **BE ENTERED** in Plaintiff's favor on Counts I and II. *See* Fed. R. Civ. P. 55 (b)(2); *Surtain*, 789 F.3d at 1244.

## B. Permanent Injunction

Plaintiff has shown it is entitled to final default judgment on Counts I and II, *see supra* Section III.A, so the Court must now decide whether a permanent injunction against Defendant is the appropriate remedy, *see* 15 U.S.C. § 1116(a). As an initial matter, the Court notes that injunctive relief is available in the default judgment setting — particularly in the trademark context — because a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement without an injunction. *See Chanel, Inc.*, 362 F. Supp. 3d at 1263; *Agad*, 911 F. Supp. at 1509–10.

To prove a permanent injunction is warranted here, Plaintiff must demonstrate that it has suffered irreparable harm, remedies like money damages are inadequate, the balance of hardships favors awarding Plaintiff equitable relief, and a permanent injunction would not disserve the public interest. *See Angel Flight of Ga., Inc.*, 522 F.3d at 1208. Because Plaintiff has succeeded on its trademark infringement claim, the Court presumes it has been irreparably harmed, which means Plaintiff has satisfied the first element of the permanent injunction test. *See Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1287 & n.4; *Amoco Prod. Co.*, 480 U.S. at 546 n.12. And courts in this District have already held there is no adequate remedy at law for the injury a defendant's continuing infringement causes, so Plaintiff has satisfied the second element of the permanent injunction test as well. *See Agad*, 911 F. Supp. at 1509–10.

As to the balance of hardships, Plaintiff stands to "continue to suffer irreparable harm to its reputation and the goodwill of its BAGILAANOE trademark." *See* ECF No. [1] at ¶52; s*ee Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1287 (explaining that confused consumers who buy the infringing product and are unsatisfied with it "might stop purchasing the original" product, which would leave the mark's owner "at the mercy" of the infringer because it had "no control over the

quality" of the infringing product).  Defendant, on the other hand, has no right to use the mark so it "could suffer no legitimate hardship by being forced to stop that which it had no right to do." *See id.* at 1288.  Thus, the balance of hardships favors Plaintiff, and it has satisfied the third element of the permanent injunction test.  *See id.*

Finally, the Eleventh Circuit has explained that the public interest relevant to the issuance of a permanent injunction is "the public's interest in avoiding unnecessary confusion." *See Angel Flight of Ga., Inc.*, 522 F.3d at 1209.  It has also noted "the public deserves not to be led astray" by inevitably confusing marks, which is why a "complete injunction" against an infringer is "the order of the day" in "ordinary trademark infringement actions." *See id.* (quotation marks omitted). And courts in this District have concluded "the public as a whole has a paramount interest not to be confused" by a defendant's infringement.  *See Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1288 (quotation marks omitted).  Measured against those principles, the Court finds that preventing Defendant from using the BAGILAANOE Mark best serves the public interest because products and e-commerce storefronts bearing the BAGILAANOE Mark will likely cause consumer confusion. *See supra* Section III.A.1.

Plaintiff has satisfied all four prongs of the permanent injunction test.  *See Angel Flight of Ga., Inc.*, 522 F.3d at 1208.  Accordingly, I **RECOMMEND** that a permanent injunction **BE ISSUED** against Defendant prohibiting it from using the BAGILAANOE Mark.  *See* 15 U.S.C. § 1116(a); *Chanel, Inc.*, 362 F. Supp. 3d at 1264 (noting that a court's broad equity powers allow it to fashion whatever kind of injunctive relief is necessary to stop a defendant's infringing activities).

## C.  Statutory Damages

Finally, Plaintiff requests an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

*See* ECF No. [27] at 9–13.  The federal trademark statute expressly allows Plaintiff to elect to recover, instead of actual damages and profits, an award of statutory damages as a remedy for infringement.  *See* 15 U.S.C. § 1117(c).  Those statutory damages can be between $1,000 and $200,000 for each counterfeit mark for each type of good sold or, if the infringement was willful, up to $2,000,000 for each counterfeit mark for each type of good sold.  *See id.* § 1117(c)(1)–(2). Here, Plaintiff requests the highest award permissible under § 1117(c) — $2,000,000 for one counterfeit mark for one type of good sold.  *See* ECF No. [27] at 13.  Accordingly, the Court must determine whether Defendant's infringement warrants Plaintiff's requested relief.

The Supreme Court of the United States "has explained that a statutory damages award 'must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum' but '[w]ithin these limitations the court's discretion and sense of justice are controlling.'"  *Top Tobacco, L.P. v. Star Importers & Wholesalers, Inc.*, No. 24-10765, 2025 WL 1248707, at *3 (11th Cir. Apr. 30, 2025) (extending the statutory damages principals in copyright cases to the trademark context) (quoting *F. W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 232 (1952)).  In considering an award of statutory damages, the district court may consider a number of factors, including but not limited to: (1) whether the defendant's conduct was innocent or willful; (2) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; (3) the expenses saved and profits reaped; (4) the revenue lost by the plaintiff; (5) the value of the trademark; (6) the deterrent effect of others besides the defendant; (7) the potential for discouraging the defendant; and (8) whether the counterfeit goods posed a risk to public safety.  *See id.* at *2; *see also Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 1:14–cv–22859–JAL, 2014 WL 4948632, at *4 (S.D. Fla. Oct. 2, 2014). Additionally, a district court may consider whether the award would "constitute a windfall for the

plaintiff and thus should bear some relationship to the actual damages suffered by the plaintiff and in consideration of the other factors." *Id.* at \*4; *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008) (quoting *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568–69 (S.D.N.Y. 1995)).

As a threshold matter, Defendant's willfulness (the first factor) can be established for several reasons. First, Plaintiff owns the federally registered, fictitious mark "BAGILAANOE," which Defendant copied verbatim as the name of his Internet Store. *Compare* ECF No. [1-1] *with* ECF No [1-3]. Thus, the Court infers Defendant's use of a fictitious word could only be intended to confuse consumers into believing his store was affiliated with Plaintiff. Second, Defendant engaged in identity theft by using a Florida business's name, phone number, and address without permission in order to conceal his identity — further evidencing willfulness, knowledge, and intent of wrongdoing in this case. *See* ECF No. [1-2] at 9-10, 40-41. Third, Defendant's default itself supports an inference of willfulness. *See Arista Records*, 298 F. Supp. 2d at 1313 (collecting cases).

Additional support for willfulness also supports the second factor regarding Defendant's cooperation (or lack thereof). The record demonstrates that Defendant appeared in the Related Action and conceded via affidavit that he sold at least five of the infringing products and that this District has personal jurisdiction over him. *See* ECF No. [1-2] at 23. Although aware of Plaintiff's trademark enforcement action, Defendant neither resolved the dispute nor ceased its use of the Mark. Instead, he moved to vacate judgment for lack of personal jurisdiction, and then refused to appear after Plaintiff refiled in this District. *See* ECF No. [1] at ¶¶18-19, 31; ECF No. [1-2] at 23-24, 26; *see Arista Records*, 298 F. Supp. 2d at 1313 (finding willfulness when "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's

communications"); *Louis Vuitton Malletier & Oakley v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice."). Having established Defendant's willfulness, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c)(2).

Although the first and second factors weigh in favor of Plaintiff, Plaintiff has provided little else in support of its request for the maximum amount of statutory damages. Recognizing Defendant has refused to participate in this litigation, Plaintiff lacks the ability to make estimates of Defendant's gains or Plaintiff's losses to support the third and fourth factors. "Where no specific information concerning the revenue defendants earned, or revenue lost by the plaintiff, is available, but the value of the trademarks is high, and deterrence favors substantial statutory damages, courts have awarded plaintiffs damages amounting to half of the permissible statutory range." *Volkswagen Group of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 1997573, at *10 (S.D. Fla. May 18, 2021) (citing *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12 Civ. 9190, 2013 WL 6481354, at *4 (S.D.N.Y. Dec. 3, 2013) (awarding plaintiff $1,000,000, half the maximum statutory damages permissible for willful infringement). "The higher the value of the trademark, the greater the likelihood that the infringement will harm the infringed party's reputation." *Id.* (citing *Diane Von Furstenberg Studio v. Snyder*, No. 1:06-CV-1356, 2007 WL 3143690, at *5 (E.D. Va. Oct. 23, 2007)).

But Plaintiff fails to provide any evidence as to the value of the BAGILAANOE Mark (the fifth factor). Plaintiff only alleges that it sells the BAGILAANOE clothing items through ecommerce platforms, which has provided "significant" sales and revenue. *See* ECF No. [1] at ¶7. Plaintiff's allegations are insufficient to support the finding that the BAGILAANOE Mark is world-famous or that Plaintiff has spent sufficient time and money in building the goodwill of its

brand or protecting the Mark to make the Mark "high value." *See Volkswagen Group*, 2021 WL 1997573, at *10.

As to the sixth and seventh factors, courts in this District have held that much lower amounts were sufficient to deter the defendant and others from infringing activities. *See Volkswagen Group*, 2021 WL 1997573, at *15 (finding $609,227.10 sufficient for the infringement of two separate Audi Trademarks); *Skonyon LLC v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 23-61527-CV, 2024 WL 5264413, at *5 (S.D. Fla. June 4, 2024) (awarding $2,000.00 per Skonyon mark, per type of good).  Here, the record demonstrates that Defendant is selling one type of infringing product priced at $11.67. *See* ECF No. [1-2] at 30.  Without more, Plaintiff fails to provide a basis to support the maximum amount of statutory damages.

Based on the above considerations, as reasonable compensation to Plaintiff and to deter Defendant and others from infringing the BAGILAANOE Mark — the stated goals of 15 U.S.C. § 1117(c) — I respectfully **RECOMMEND** that Plaintiff **BE AWARDED** $200,000 against Defendant as statutory damages for trademark infringement.[4]  Finally, given that "[i]nterest shall be allowed," *see* 28 U.S.C. § 1961(a) and (b), for any money judgment in a civil case, I respectfully **RECOMMEND** that Plaintiff **BE AWARDED** interest from the date of the Default Final Judgment, computed daily and compounded annually.

## IV.     CONCLUSION

Accordingly, I respectfully **RECOMMEND** that Plaintiff Shenzhen Dejiayun Network Technology Co., Ltd.'s Motion for Entry of Default Under Fed. R. Civ. P. 55(a) and Entry of Final

---

[4] The Amended Complaint also contains a claim for false designation of origin (Count II). The allowed scope of monetary damages for that count is contained within 15 U.S.C. § 1117(c). Accordingly, I respectfully **RECOMMEND** that the monetary judgment on Count II be limited to the amount awarded pursuant to Count I.

Judgment by Default Under Fed. R. Civ. P. 55(b) Against Defendant, Chenxi Li, **ECF No. [27]**, be **GRANTED** as follows:

      **a.**     Default Final Judgment **BE ENTERED** in favor of Plaintiff and against Defendant as to all counts of the Amended Complaint, *see* Fed. R. Civ. P. 55 and 58;

      b.     Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be **PERMANENTLY ENJOINED AND RESTRAINED**, *see* Fed. R. Civ. P. 65, from:

          a.   Using the BAGILAANOE mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine BAGILAANOE product or is not authorized by Plaintiff to be sold in connection with the BAGILAANOE mark;

          b.   Passing off, inducing, or enabling others to sell or pass off any product as a genuine BAGILAANOE product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BAGILAANOE mark;

          c.   Committing any acts calculated to cause consumers to believe that Defendant's counterfeit BAGILAANOE products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

          d.   Further infringing the BAGILAANOE mark and damaging Plaintiff's goodwill;

          e.   Manufacturing, shipping, delivering, holding for sale, transferring, or otherwise

moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, which bear any of Plaintiff's trademarks, including the BAGILAANOE mark, or any reproductions, counterfeit copies, or colorable imitations thereof, or the BAGILAANOE mark;

f.   Using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bear the BAGILAANOE mark; and

g.   Operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale products or inventory not authorized by Plaintiff which bear the BAGILAANOE mark.

3.   Plaintiff **BE AWARDED** the following statutory damages in addition to the permanent injunctive relief awarded to Plaintiff:

a.   Plaintiff is awarded **$200,000.00** against Defendant pursuant to 15 U.S.C. § 1117(c), for which let execution issue forthwith, based upon the Court's finding that Defendant infringed Plaintiff's trademark. The Court considered both the willfulness of Defendant's conduct and the deterrent value of the award imposed, and the award falls within the permissible statutory range under 15 U.S.C. § 1117(c).

4.   Plaintiff **BE AWARDED** interest from the date of the Default Final Judgment, compounded annually pursuant to the provisions of 28 U.S.C. § 1961.

5.   The Court **RETAIN** jurisdiction to enforce its Default Final Judgment and

CASE NO. 24-CV-23127-MOORE/Elfenbein

permanent injunction.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on May 19, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record